**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LEROY T. MOORE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 11-281 (JLL) |
| | : | |
| v. | : | |
| : | | |
| PAULA T. DOW, et al., | : | |
| | : | |
| Defendants. | : | |

- and -

| | | |
|---|---|---|
| LEROY T. MOORE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 11-6198 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MIDDLESEX COUNTY PROSECUTOR'S, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

**LEROY T. MOORE, Plaintiff pro se**
100 River Run, #V-8
Carteret, New Jersey 07008

**ERIC L. HARRISON, ESQ.**
METHFESSEL & WERBEL, PC
3 Ethel Road, Suite 300, P.O. Box 3012
Edison, New Jersey 08818-3012
Counsel for Defendants, Middlesex County Prosecutor's Office,
Middlesex County Prosecutor Bruce J. Kaplan, Assistant

Prosecutor Christopher Kuberiet, Valerie Lispano, Joseph
Celentano, Sergeant Scott, Investigator Craig Marchak,
Investigator Rodriguez and Investigator Ellmyer

**GARY S. SPAGNOLA, ESQ.**
GOLDEN, ROTHSCHILD, SPAGNOLA, LUNDELL, LEVITT & BOYLAN, PC
1011 Route 22 West, Suite 300, P.O. Box 6881
Bridgewater, New Jersey 08807-0881
Counsel for Defendants, Carteret Police Department, Larissa
Lilavois (formerly Berrios)(Incorrectly Pleaded as Lisa
Berrios), and Michael Dammaan

## LINARES, District Judge

Presently before the Court in these consolidated matters is a
motion for summary judgment (Docket entry # 79)[1] filed on behalf of
Defendants, Middlesex County Prosecutor's Office, Middlesex County
Prosecutor Bruce J. Kaplan, Assistant Prosecutor Christopher
Kuberiet, Valerie Lispano, Joseph Celentano, Sergeant Scott,
Investigator Craig Marchak, Investigator Rodriguez and Investigator
Ellmyer, (hereinafter "Middlesex County Prosecutor's Office
Defendants" or "MCPO Defendants"). Plaintiff filed an opposition
to the MCPO Defendants' motion. (Dkt. ## 83, 84.) The MCPO
Defendants also filed a reply in support of their motion. (Dkt. #
81.)[2]

---

1 The Court's reference to documents by docket entry number pertains
to the docket record in Civil No. 11-281 (JLL). Where appropriate,
the Court also will identify the corresponding docket entry number
in the consolidated case, Civil No. 11-6198 (JLL). In this instance,
the corresponding docket entry number for the identical summary
judgment motion by the Mercer County Prosecutor's Office Defendants
is Docket number 21.
2 Civil No. 11-6198 (JLL) (Dkt. # 22).

On January 23, 2013, counsel for Defendants, Lisa Berrios, Carteret Police Department and Michal Damman (hereinafter the "Carteret Defendants") filed a motion for summary judgment essentially relying on the motion filed by the MCPO Defendants. (Dkt. # 80.) These motions are decided on the papers without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, summary judgment will be granted and the Complaints in both Civil Nos. 11-281 (JLL) and 11-6198 (JLL) will be dismissed.

## I.  BACKGROUND

### A.  Procedural History

On or about January 18, 2011, Plaintiff, Leroy T. Moore, filed this civil rights Complaint, pursuant to 42 U.S.C. § 1983, against the following defendants: Paula T. Dow, Attorney General of the State of New Jersey; Bruce Kaplan, Middlesex County Prosecutor; Valerie Lispano; Joseph Celentano; Sgt. Scott; Investigator Craig Marchak; Investigator Rodriguez; Investigator Ellmyer; Lisa Berrios; Michael Dammaan; Carteret Police Department; Middlesex County Prosecutor's Office; Chief of Carteret Police Department; Officer Paul Stenetella; and Christopher Kuberiet, Esq.  (Dkt. # 1, Complaint, Caption).  The Complaint alleges that, on August 28, 2009, the MCPO Defendants and officers of the Carteret Police Department entered Plaintiff's residence pursuant to a search warrant purportedly

3

forged by Defendant Celentano. The Complaint also alleges that the officers entered Plaintiff's apartment with an unleashed and unsupervised K-9 dog, and grabbed Plaintiff's young daughter, tossing her to the ground. (*Id.*, ¶¶ C.1, C.2.) Plaintiff further alleges that Defendants Dammaan, Celentano and Stenetella used excessive force against Plaintiff by striking Plaintiff's head with a police scanner, and choking Plaintiff while he was handcuffed. Plaintiff did not allege any injuries from the assault. (*Id.*, ¶ C.2.) The Complaint also asserted general claims of failure to train and/or supervise based on supervisory liability against Defendants, then-Attorney General Dow, Middlesex County Prosecutor Kaplan, and the Chief of the Carteret Police Department. A malicious prosecution claim was asserted against Defendant Kuberiet. (*Id.*)

In an Opinion and Order issued on June 2, 2011, the Court dismissed the Complaint without prejudice as to the supervisory Defendants, Dow, Kaplan, and the Carteret Chief of Police. The malicious prosecution claims asserted against Defendants Kuberiet and Lispano were also dismissed without prejudice, and the Complaint was dismissed without prejudice as to Defendant Ellmyer for failure to allege any facts sufficient to state a cognizable claim of constitutional deprivation. Finally, the Court dismissed with prejudice Plaintiff's excessive force claim for failure to state a

4

claim.[3]  However, the Court allowed Plaintiff's Fourth Amendment unlawful search and seizure claim to proceed, but issued an Order directing the parties to show cause why the claim should not be stayed until completion of Plaintiff's state criminal proceedings.  (Dkt. # 19.)

By Order entered on August 9, 2011, this matter was stayed pending conclusion of the state criminal proceedings against Plaintiff.  (Dkt. # 40.)  On October 20, 2011, this Court denied Plaintiff's application to amend his Complaint without prejudice until Plaintiff's state criminal prosecution was resolved.  (Dkt. # 48.)

On September 1, 2011, Plaintiff filed a civil complaint in the Superior Court of New Jersey, Law Division, captioned *Moore v. Middlesex County Prosecutor's Office, et al.*, Docket No. L-6329-11, against Defendants Middlesex County Prosecutor's Office, Assistant Prosecutor Christopher Kuberiet, and Investigator Celentano.  The Complaint alleged claims of prosecutorial misconduct regarding Plaintiff's then-ongoing state criminal proceeding, namely, a claim that Defendants breached a plea agreement.  Counsel for Defendants removed the action to this District Court, which was docketed under

---

3 The Court had acknowledged that Plaintiff had two prior opportunities to set forth allegations sufficient to state an excessive force claim, but failed to do so on both occasions.  (Dkt. # 18 at 13-15; *see also Franklin, et al. v. Borough of Carteret, et al.*, Civil No. 10-1467 (JLL) (Dkt. # 4 at 11-13)).

*Moore v. Middlesex County Prosecutor's Office, et al.*, Civil No. 11-6198 (JLL). On January 17, 2012, the Court entered an Order consolidating Civil No. 11-6198 (JLL) with Civil No. 11-281 (JLL), finding that the allegations in Civil No. 11-6198 arise from the same circumstances and events of Plaintiff's arrest, which is the subject of Civil No. 11-281. (Dkt. # 15 in Civil No. 11-6198; Dkt. # 52 in Civil No. 11-281.) The consolidated action remained stayed. (*Id.*)

On March 21, 2012, the stay was lifted upon Plaintiff's representation that the state criminal proceeding had concluded. (Dkt. # 55.) However, the Court reinstated the stay by Order entered on May 12, 2012, after Defendants' counsel informed the Court that the state criminal proceedings had not yet concluded. (Dkt. # 59.) Despite the stay, on November 19, 2012, the Court allowed Defendants to file a motion for summary judgment and a motion for default judgment in Civil Nos. 11-281 and 11-6198, respectively. (Dkt. # 70.)

The MCPO Defendants filed this motion for summary judgment on January 9, 2013. (Dkt. # 79; Dkt. # 21 in Civil No. 11-6198 (JLL).) The Carteret Defendants filed their motion for summary judgment in Civil No. 11-281 (JLL), on January 18, 2013, essentially relying on the motion filed by the MCPO Defendants. (Dkt. # 80.) Plaintiff filed an opposition to Defendants' motion on January 17, 2013. (Dkt.

# 83.)[4]  The MCPO Defendants thereafter filed a reply with exhibits. (Dkt. ## 81, 82.)  Plaintiff submitted a further response on May 14, 2013.  (Dkt. # 95.)

## B.  Statement of Facts

The following facts are derived from the Defendants' Statement of Material Facts, submitted with their motion for summary judgment, pursuant to *Fed.R.Civ.P.* 56(c).  (Dkt. # 79-4.)  Plaintiff's opposition to the motion for summary judgment did not contain a separate Statement of Material Facts, but it appears that he is relying on his opposition response to identify material facts in dispute.

### 1.  *Factual Allegations in Civil No. 11-281 (JLL)*

Plaintiff has filed four separate civil rights actions pursuant to 42 U.S.C. § 1983, each stemming from his arrest and subsequent drug charges filed in the Superior Court of New Jersey in 2009.  These actions include:  (1) *Franklin, et al. v. Borough of Carteret, et al.*, Civil No. 10-1467 (JLL) (dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), on November 15, 2010); (2) *Moore v. Dow, et al.*, Civil No. 11-281 (JLL); (3) *Moore v. Middlesex County Prosecutor's Office, et al.*, Civil No. 11-6198

---

[4] It appears that an incomplete duplicate copy of Plaintiff's opposition also was docketed in this matter.  (Dkt. # 84.)  On January 28, 2013, Plaintiff also filed an opposition to the summary judgment motion in Civil No. 11-6198 (JLL).  (Dkt. # 23.)

(JLL); and (4) *Moore v. Middlesex County Prosecutor's Office, et al.*, Civil No. 11-3879 (JLL) (dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2), on May 10, 2012).

In the present action, Civil No. 11-281 (JLL), Plaintiff alleges that, on August 28, 2009, members of the MCPO and the Carteret Police Department unlawfully entered his apartment pursuant to a search warrant allegedly forged by Defendant Celentano. Plaintiff alleges that the officers entered his apartment with an unleashed and unsupervised K-9 dog, and that the officers grabbed Plaintiff's young daughter and tossed her to the ground. He further alleges that Celentano hit Plaintiff on the head with a police scanner and choked him while he was handcuffed, but Plaintiff does not allege any injuries from the incident. (Dkt. # 1 at ¶¶ C.1, C.2.)

On June 2, 2011, this Court dismissed without prejudice Plaintiff's claims asserting (a) supervisor liability against Defendants Dow and Kaplan; (b) malicious prosecution against Defendants Lispano and Kuberiet; and (c) unspecified claims against Defendant Ellmyer. (Dkt. # 18.) Plaintiff's Fourth Amendment claim alleging unlawful search and seizure was allowed to proceed, but the Court issued an Order directing the parties to show cause why the claim should not be stayed until completion of Plaintiff's state criminal proceedings. (Dkt. # 19.) The Court stayed this matter shortly thereafter on August 9, 2011. (Dkt. # 40.)

2.  *Factual Allegations in Civil No. 11-6198 (JLL)*

In the consolidated case, Civil No. 11-6198 (JLL), Plaintiff alleges that, on October 8, 2009, he agreed to a plea arrangement with the MCPO, which would enable Plaintiff to "work his sentence down" to probation by aiding the police as an informant. (Dkt. # 21-3 at Exhibit D, Factual Background, ¶ 1.) On January 28, 2010, Plaintiff alleges that he spoke with Defendant Celentano by telephone regarding an upcoming "ongoing transaction." (*Id.*, ¶ 4.) During their phone conversation, Plaintiff informed Celentano that he had a required court appearance on the same day as the upcoming transaction, and Plaintiff alleges that Celentano told Plaintiff that he would "cancel said date [sic] don't [sic] worry about it." Plaintiff was arrested later for failure to appear in court and was charged with jumping bail. (*Id.*, ¶¶ 4, 5.) Plaintiff alleges that Celentano "purposely misled" Plaintiff, causing Plaintiff to receive additional charges, in violation of Plaintiff's Eighth and Fourteenth Amendment rights. (*Id.*, ¶ 7.) Plaintiff also alleges that Defendant Kuberiet breached the plea agreement by stating that Plaintiff did not provide enough assistance. (*Id.*, ¶ 6.)

On January 23, 2012, the Superior Court of New Jersey allowed Plaintiff to withdraw his guilty plea, move for a hearing to determine whether Plaintiff had provided substantial assistance, or

9

re-negotiate his plea agreement.[5]  The state court found that "there [was] an issue as to the prosecutor's actual recommendation at sentencing and the terms of the negotiated plea." (*Id.*, Ex. F.) Citing *State v. Gerns*, 145 N.J. 216 (1996), the state court commented that a plea agreement should define the terms of cooperation to make certain that the defendant fully understands the penal consequences of his plea. (*Id.*)  The state court concluded that Plaintiff did not understand the extent of the cooperation in the plea agreement, and the plea agreement failed to include the prosecutor's recommended sentence or the sentence that Plaintiff would receive if he cooperated to the satisfaction of the prosecutor. (*Id.*)

On February 14, 2012, Plaintiff wrote to this Court to inform that "on February 6, 2012, [Plaintiff's] attorney advised the court that [he] will be withdrawing said plea and proceeding for a trial." (Dkt. # 53.)

On January 2, 2013, Plaintiff filed a fifth related lawsuit in the Superior Court of New Jersey, Law Division, Middlesex County, under Docket No. MID-L-39-13, against many of the same Defendants in the present case.  On February 15, 2013, the named Defendants in that case removed the state action to this Court, and Plaintiff did

---

5 This Court took judicial notice of the state court's January 23, 2012 Opinion and Order.

not seek to remand the case back to state court. *See Moore v. Carteret Police Department*, et al., Civil No. 13-943 (JLL).

In Plaintiff's most recent case, Civil No. 13-943 (JLL), Plaintiff asserts a claim of malicious prosecution stemming from the filing of a new indictment by Defendant Kuberiet against Plaintiff, on December 20, 2012, after Superior Court Judge Toto dismissed the 2009 grand jury indictment for failure to establish a prima facie case of possession of a controlled dangerous substance. (Dkt. ## 81, 82, Exhibit Q.) In its December 17, 2012 written decision, the court noted that, during the grand jury presentation, Officer Reyes testified that "a search incident to arrest of Defendant revealed a twenty dollar bill with a white powdery substance on it as well as a small amount of marijuana," and that "the white powdery substance was 'known' to be cocaine." (Dkt. # 82, Ex. R.) The state court found that the grand jury indicted Plaintiff on the charge of possession of a controlled dangerous substance solely on the testimony of Officer Reyes, and that the State had not submitted any further evidence to support the conclusion that the white powdery substance on the twenty dollar bill was in fact cocaine. Thus, the court concluded that the State failed to establish a prima facie case as to the first element of N.J.S.A. 2C:35-10(a)(1), and dismissed the indictment without prejudice. The court expressly stated, however, that it did not grant dismissal of the indictment on grounds

of "vindictive prosecution, selective prosecution, malicious prosecution, or violation of Defendant's Constitutional rights under the 5th, 8th, or 14th Amendments." (*Id.*)

    3.   *Previous Lawsuits Subject to 28 U.S.C. § 1915(g)*

Defendants' motion for summary judgment includes a motion to revoke Plaintiff's *in forma pauperis* status, pursuant to 28 U.S.C. § 1915(g). The Court notes that Plaintiff has filed the following cases in federal court, which have been dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B):

- *Moore v. Comba, et al.*, Civil No. 03-2521 (WHW) (Dkt. ## 2, 3 – dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) on June 13, 2003)

- *Moore v. Abode, et al.*, Civil No. 03-3259 (WHW) (Dkt. ## 2, 3 and 4 – dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B) on October 6, 2003 and December 10, 2003)

- *Moore v. Abortion Clinic, et al.*, Civil No. 04-963 (KSH) (Dkt. ## 3, 4 – dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on December 17, 2004)

- *Moore v. Shaw, et al.*, Civil No. 04-3343 (MLC) (Dkt. ## 5, 6 – dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) on June 27, 2005)

- *Franklin, et al. v. Borough of Carteret Police Dept., et al.,* Civil No. 10-1467 (JLL) (Dkt. ## 4, 6 - dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) on November 15, 2010)

Further, on February 18, 2005, Plaintiff filed a civil Complaint seeking *in forma pauperis* status in *Moore v. State of N.J., et al.,* Civil No. 05-1134 (FLW). In an Opinion and Order entered on May 12, 2005, the Honorable Freda L. Wolfson granted Plaintiff *in forma pauperis* status and dismissed all claims asserted by Plaintiff except a denial of access to the courts claim, which was allowed to proceed against several defendants. (Dkt. ## 2, 3.) However, on July 19, 2005, the defendants filed a motion to dismiss the complaint and to revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g) - the "three-strikes" ban. (Dkt. # 6.) In an Order entered on October 3, 2005, Judge Wolfson granted the defendants' motion, dismissed the complaint and denied Plaintiff's *in forma pauperis* status. The Court found that Plaintiff, while incarcerated, had at least three prior civil actions dismissed by a federal court pursuant to 28 U.S.C. § 1915(e)(2)(B), namely, *Moore v. Abode, et al.,* Civil No. 03-3259 (WHW), *Moore v. Abortion Clinic, et al.,* Civil No. 04-963 (KSH), and *Moore v. Shaw, et al.,* Civil No. 04-3343 (MLC), and that Plaintiff had not shown that he was in imminent danger of serious physical injury at the time he filed his complaint. (Dkt. # 14.)

## II.  **ANALYSIS**

A.  The Consolidated Cases Are Ripe for Disposition

In allowing Defendants to move for summary judgment, the Court directed that Defendants explain why the cases are ripe for summary disposition.  With regard to Civil No. 11-281 (JLL), Defendants argue that: (1) Plaintiff was barred from bringing a civil action without prepayment of the filing fee if he has incurred three strikes pursuant to 28 U.S.C. § 1915(g); (2) the outcome of the state criminal proceeding has no relevance to Plaintiff's federal civil litigation history, which is the only evidence needed to resolve Defendant's motion pursuant to 28 U.S.C. § 1915(g); and (3) the motion presents only a legal question that can be resolved solely by reference to court records without the need for fact discovery.

As to Civil No. 11-6198 (JLL), Defendants contend that this matter is ripe for summary disposition because the New Jersey state court's decision allowing Plaintiff to retract his guilty plea, which Plaintiff did so retract, is wholly dispositive of Plaintiff's breach of his plea agreement claim.

Finally, this Court notes that the state criminal proceeding concluded when, on December 17, 2012, Judge Toto dismissed the indictment without prejudice.  For all of these reasons, the Court concludes that both matters are ripe for disposition.

B.  Plaintiff's *In Forma Pauperis* Status is Barred

The Prison Litigation Reform Act of 1995 ("PLRA"), enacted on April 26, 1996, prohibits a prisoner from bringing a civil action *in forma pauperis*, pursuant to 28 U.S.C. § 1915, "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g); *see also Ball v. Famiglio*, --- F.3d ----, 2013 WL 4038562, * 1 (3d Cir. 2013); *Keener v. Pennsylvania Board of Probation & Parole*, 128 F.3d 143, 144-45 (3d Cir. 1997) (holding that frivolousness dismissals prior to enactment of PLRA count as "strikes" under § 1915(g)).

The federal *in forma pauperis* statute, 28 U.S.C. § 1915, is designed to ensure that indigent litigants, including prisoners, have meaningful access to the federal courts. *Ball, supra*. However, because prisoner litigation represents an "outsized share of filings" in federal courts, the PLRA was enacted to "filter out the bad claims and facilitate consideration of the good." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 203, 204 (2007)). One of the "filter" measures includes the "three-strikes" provision under § 1915(g), which was created "to limit the number of lawsuits brought by prisoners with a history of meritless litigation." *Ball, supra*.

Thus, if a prisoner previously has incurred three strikes pursuant to dismissals based on § 1915(e)(2)(B), and he attempts to bring another lawsuit *in forma pauperis*, the court should deny indigent status and dismiss the complaint without prejudice to the prisoner's right to re-file upon pre-payment of the full filing fee. *Brown v. City of Philadelphia*, 331 F. App'x 898, 899 (3d Cir. 2009).

Analysis under the "three-strikes rule" of § 1915(g) must be made at the time of commencement of the action. *Lopez v. U.S. Dept. of Justice*, 228 F. App'x 218, 219 (3d Cir. 2007) (citing *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001)). "[O]nly the strikes actually earned up to that time are relevant. The statute does not authorize courts to revoke *in forma pauperis* status if a prisoner later earns a third strike." *Lopez*, 228 F. App'x at 219. Additionally, "[a] dismissal does not qualify as a 'strike' for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights." *Id.* at 218.

The three-strikes provision of § 1915(g) does not block a prisoner's access to the federal courts. Rather, it only denies the litigant the privilege of filing before he has acquired the requisite filing fee. *Ball*, 2013 WL 4038562 at *2. Further, a prisoner who has three or more such dismissals may be excused from this rule only if he is "under imminent danger of serious physical injury." *Keener, supra*. When deciding whether an inmate meets the "imminent danger"

16

requirement, a court must examine the situation faced by the inmate at the time of the filing of the complaint, and a showing of danger in the past is insufficient to demonstrate "imminent danger." *Abdul-Akbar*, 239 F.3d at 312.

As indicated by Defendants, Plaintiff has filed five earlier civil actions in the District of New Jersey that were dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). These cases are *Moore v. Comba, et al.*, Civil No. 03-2521 (WHW); *Moore v. Abode, et al.*, Civil No. 03-3259 (WHW); *Moore v. Abortion Clinic, et al.*, Civil No. 04-963 (KSH); *Moore v. Shaw, et al.*, Civil No. 04-3343 (MLC); and *Franklin, et al. v. Borough of Carteret Police Dept., et al.*, Civil No. 10-1467 (JLL). Moreover, Plaintiff had another action dismissed after the district court determined, upon defendant's motion, that Plaintiff had incurred three strikes under 28 U.S.C. § 1915(g). *See Moore v. State of N.J., et al.*, Civil No. 05-1134 (FLW) (Dkt. # 14). Accordingly, Plaintiff is deemed a litigant with "three strikes" under 28 U.S.C. § 1915(g) because he has passed the statutory limit set forth in that statute.[6]

---

[6] The Court also acknowledges Defendants' argument concerning the vexatious nature of Plaintiff's civil complaints. (Dkt. # 79-5 at 11, n. 2.) In particular, Defendants contend that Plaintiff is "precisely the sort of serial frivolous litigant that Congress had in mind when it enacted 28 U.S.C. § 1915(g) to 'limit the filing of frivolous and vexatious prisoner lawsuits.'" (Id.) Defendants further note that Plaintiff has displayed contemptuous and vexatious conduct in his state criminal proceedings by using obscene language

Plaintiff is now precluded from seeking *in forma pauperis* status pursuant to § 1915(g)'s "three strikes" rule unless he alleges facts to show that he is in "imminent danger of serious physical injury," which would excuse him from the restrictions under § 1915(g).

In his Complaint, Plaintiff makes no allegations or claims of "imminent danger." Rather, the Complaint merely asserts a Fourth Amendment unlawful search and seizure claim with regard to Plaintiff's 2009 arrest and indictment for drug possession. Consequently, because the Complaint in this action does not contain sufficient allegations reasonably suggesting that Plaintiff is in "imminent danger of serious physical injury," which would excuse him from the restrictions under § 1915(g), Plaintiff may not proceed *in forma pauperis*. Accordingly, this Court will grant Defendants' motion to revoke Plaintiff's *in forma pauperis* status and dismiss the Complaint in Civil No. 11-281 (JLL). Plaintiff may seek to reinstate his action in Civil No. 11-281 (JLL) only upon submission of the full filing fee pursuant to 28 U.S.C. § 1914(a).

C. Summary Judgment as to Civil No. 11-6198 (JLL)

1. *Summary Judgment Standard*

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is

---

in addressing the state judge and referring to Defendant Kuberiet and his wife as "murderers" after they tragically lost their daughter in a car accident. (Id.)

entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(a); *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits ... or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Fed.R.Civ.P.* 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. Id. at 248-49. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props. Ltd.*, 463 F. App'x 117, 119 (3d Cir. 2012) (citation omitted).

    2.  *Plaintiff's Breach of Contract Claim is Moot*

In the Complaint filed in Civil No. 11-6198, Plaintiff alleges that on October 8, 2009, he had entered into a plea agreement with the MCPO allowing Plaintiff to "work his sentence down" to probation in return for providing assistance and information to law enforcement. (Civil No. 11-6198 (JLL) at Dkt. # 21-3, Ex. D - Factual Background at ¶ 1.) Plaintiff asserts that Defendant Kuberiet breached this plea agreement by stating that Plaintiff failed to provide enough assistance. Defendants now contend that this claim is rendered moot by the state court's January 2012 decision which allowed Plaintiff either to withdraw his guilty plea, move for a hearing to determine whether his cooperation with the MCPO was of substantial benefit to the State, or re-negotiate a plea agreement. Plaintiff chose to withdraw his plea agreement in February 2012.

The Third Circuit has held that where a criminal defendant asserts a claim for breach of a plea agreement, his sole remedy is to seek specific performance or to withdraw the guilty plea. *United States v. Williams*, 510 F.3d 416, 426-27 (3d Cir. 2007). The Third Circuit has further held that the government is in breach of a plea agreement only where there is a showing that the government evaluated the defendant's assistance in bad faith. *United States v. Ortiz*, 314 F. App'x 467, 471 (3d Cir. 2008). Under New Jersey state law, where the prosecutor has the authority to assess defendant's cooperation under a plea agreement, the defendant has the right to

a hearing in state court to determine whether the cooperation was adequate under the terms of the plea agreement. *See State v. Gerns*, 145 N.J. 216, 228-29 (1996) (citing New Jersey Attorney General Guidelines).

Here, it is clear that Plaintiff has obtained the relief to which he was entitled in state court. Specifically, in a written decision rendered on January 23, 2012, Judge Toto allowed Plaintiff to retract his guilty plea. Plaintiff did so on February 6, 2012. Further, on January 18, 2012, this Court declared in an Order granting a stay of this matter, Civil No. 11-6198 (JLL), that "[s]hould the Superior Court permit Plaintiff to withdraw his guilty plea, the plea agreement which is the subject of the instant litigation will be null and void, making the matter moot and defeating this Court's jurisdiction over the matter." (Dkt. # 15 at ¶ 4.) Therefore, since the Superior Court of New Jersey has allowed Plaintiff to retract his guilty plea, and Plaintiff has withdrawn his guilty plea on February 6, 2012, his claim of breach of the plea agreement is rendered moot and will be dismissed accordingly.

3. *Eighth Amendment Claim*

Plaintiff also asserts that the actions of Defendants Kuberiet and Celentano, in stating that Plaintiff failed to provide adequate cooperation and in telling Plaintiff that he did not have to attend a scheduled court appearance, violated his Eighth Amendment rights.

21

The Eighth Amendment prohibits cruel and unusual punishment and was designed to protect convicted prisoners. Specifically, the Eighth Amendment's prohibition against cruel and unusual punishment generally pertains to the actions or conduct of prison officials with respect to a prisoner's confinement, such as prohibiting the use of excessive force, and imposing a duty to provide "humane conditions of confinement." *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010).

Here, Plaintiff has not made any allegations that he suffered any instances of excessive force while confined, or that he was subjected to unconstitutional conditions of confinement during his period of incarceration. Therefore, the Court holds that Plaintiff has not stated a cognizable claim for relief under the Eighth Amendment, and this claim will be dismissed.

4. *Fourteenth Amendment Claim*

The Court likewise finds that Plaintiff has failed to state a cognizable claim under the Fourteenth Amendment. Plaintiff alleges only that Defendant Kuberiet "continued purposely [to deprive] [P]laintiff of the benefit he was entitled to ... purposely to obtain a benefit for himself," and that Defendant Celentano "purposely misled" Plaintiff regarding the adjournment of a court date, which Celentano did not adjourn, in violation of Plaintiff's Eighth and

22

Fourteenth Amendment rights.   (Dkt. # 21-3, Ex. D, Factual
Background at ¶¶ 4, 5 and 6.)

Defendants argue that the Fourteenth Amendment claim must be
dismissed under the "more-specific-provision" rule because
Plaintiff alleges the very same facts in support of his Eighth
Amendment claim to support his Fourteenth Amendment claim.   *See*
*Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249 (3d Cir. 2010),
*cert. denied*, --- U.S. ----, 131 S.Ct. 1614, 179 L.Ed.2d 502 (2011).
The *Betts* court addressed the Supreme Court's
"more-specific-provision" rule, which states that "if a
constitutional claim is covered by a specific constitutional
provision, such as the Fourth or Eighth Amendment, the claim must
be analyzed under the standard appropriate to that specific
provision," and not under the Fourteenth Amendment's substantive due
process standard.   *Id*.   In *Betts*, the plaintiff supported his
Fourteenth Amendment claims with the same evidence he relied on to
support his Eighth Amendment claim.   *Id*.   The Third Circuit held
that plaintiff may not challenge the very same conduct under both
substantive due process and the Eighth Amendment, and dismissed the
Fourteenth Amendment claims accordingly.   Id. at 261.

Here, the Complaint contains no facts to support a cognizable
Fourteenth Amendment claim separate and apart from the Eighth
Amendment claim.   Therefore, the Court holds that Plaintiff's

Fourteenth Amendment claim is barred pursuant to the "more-specific-provision" rule, and the Fourteenth Amendment claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the Court will grant the MCPO and Carteret Defendants' motions for summary judgment, (Dkt. ## 79, 80), as to Civil No. 11-281 (JLL), dismissing the action in its entirety, pursuant to 28 U.S.C. § 1915(g), without prejudice to Plaintiff's right to re-file his Complaint with prepayment of the full filing fee as required under 28 U.S.C. § 1914(a). Further, the Court grants the MCPO Defendants' motion for summary judgment (Dkt. #21), with respect to Civil No. 11-6198 (JLL), and dismisses the Complaint in its entirety as to all named Defendants. An appropriate Order follows.

JOSE L. LINARES
United States District Court